Spring Term
1839.

## Mountjoy and Wife *against* Lashbrook and Others,

Chancery.

[Mr. Hord for plaintiffs: Messrs. Payne and Waller and Mr. Owsley for defendants.]

FROM THE CIRCUIT COURT FOR MASON COUNTY.

Chief Justice ROBERTSON delivered the Opinion of the Court.

*April 22.*

BY the last will of *John Lashbrook*, of the county of Mason, who died in 1835, lands, slaves, household furniture, and money, were devised to his two sons *William* and *Peter, in trust* for the use and benefit of his daughters, (of whom *Mrs. Mountjoy* of the same county is one,) to each of whom the testator devised the use in severalty, of specific lands and slaves and a specified quantity of furniture and amount of money, during their respective lives, remainder to their children.

The will declared that the property, thus devised in trust, was *vested* in the " trustees for their sisters, respect-" ively, to be *held* for their exclusive use and benefit, *in* " *the name and under the control of said trustees;*" and also contained the following clause—" It is my further will " that my sons are not to be held responsible for the " trust estate put into their hands for their sisters, after " they shall have applied it or given it up to them, or dis-" posed of it with their consent, to their use or the use " of their children."

At the time of the testator's death, some of the slaves devised to the use of Mrs. *Mountjoy* were in her possession; and others of them, remaining in his own possession, were taken and kept or hired out by the trustees, for her benefit: and each of the daughters obtained the possession of the beds and other household furniture devised to their use. The trustees offered to surrender the slaves

A will, containing devises to the testator's sons in trust for his daughters, upon which—the nature of the property, and the several clauses relating to it, stated and considered— it is *held*, that where the testator devised certain *slaves* to his sons for the use of his daughters for life, then to their children, & declared that the property devised was vested in the trustees for their sisters respectively, to be held for their exclusive use and benefit, in the name and under the control of said trustees &c. the daughters were entitled *to the possession*, as well as the use, of the slaves devised to them respectively, without any bonds being given by them or their husbands, for the preservation, proper use, or surrender of the slaves—subject to such supervision and control only, by the trustees, as may be necessary to prevent any perversion or abuse of the trust, to the injury of the beneficiaries, or endangering the rights of those in remainder. So also, as to *furniture* devised in the same way. But as to *money* which constituted a part of the same devise, the beneficiaries are not entitled to the possession of it: it is the right and duty of the trustees to hold the principal sum, make it as productive as possible, and pay over the proceeds, annually, to the beneficiaries.

VIII. 5

Spring Term
1839.

*Mountjoy & wife*
vs.
*Lashbrook &c.*

also to Mrs. *Mountjoy* and her husband, if he would execute to them a bond with security, for securing the use to his wife, according to the trust, and restitution to them whenever demanded, and also the nonremoval of any one slave out of the county of Mason, without their consent. That offer was rejected; and the trustees having refused to deliver the slaves to either Mountjoy or his wife, without some such bond, they filed a bill in chancery praying, among other things, for a decree compelling the trustees to pay to them the money bequeathed, and deliver to them the slaves unconditionally and without any security.

Upon the final hearing of the case, on the bills, answers and various depositions, the Circuit Court decreed that Mountjoy should have the possession of the slaves, upon condition that he would give bond with approved security for the keeping of them in this State, and for their forthcoming for the use of his wife's children at her death. But he refused to give the required bond; and therefore, the bill as to the slaves was dismissed, and a decree rendered for the partition of some land devised in trust, and for the unconditional payment to Mountjoy of the money bequeathed to the trustees in trust for his wife.

From that decree Mountjoy and wife have appealed to this Court; and now insist that they are entitled to the possession of the slaves without giving any bond or security. And the question thus presented, is the only one we shall consider.

Though the will vested in the trustees the legal title to all the property devised in trust for the testator's daughters, yet, in equity, each *cestui que trust* is deemed the absolute owner, and nothing appearing or being presumed to the contrary, will be equitably entitled to the possession of such property as will yield a profit in the possessory use of it. And moreover, it is our opinion, that it was the evident intention of the testator in this case, that each of the beneficiaries should be entitled to the possession of the land, slaves, and furniture, and that each of them might, if she should prefer it, enjoy the profits by the use of the specific property itself.

This deduction is fortified by the nature of the property. It would be unreasonable to presume that the testator intended that the *beds*, *chairs*, *plates*, and *dishes*, and other *household articles*, bequeathed *in trust* for his daughters—rather as memorials of himself and of days that had passed, than for their intrinsic value,—should, without their consent, be either sold or hired out by the trustees. A bequest of the use of such property necessarily implies that the possession should accompany the use. The slaves also, being both personal and domestic, should remain in the possession of the beneficial owners as long as they may elect to keep them and shall neither pervert the testator's provident purpose as to themselves nor jeopard the rights of their children. The will being silent as to the possession of the slaves, the presumption is rational, and we think legal, that the testator intended that each of his daughters should enjoy the person*al* services of the slaves secured to her for life, and especially as most of those slaves were females, and some of them had been in the possession of his daughters for some time before the publication of his will.

And this interpretation of the trust is, in our judgment, perfectly consistent with all the title and authority given to the trustees.

The will directed that the property should be held, not *by* the trustees, but "in their names," and subject to "their control." The testator's object was to place the legal title beyond the reach of the husbands or of the creditors of the husbands, and to give to the trustees such authority and control over the property, as merely to secure the beneficial use of it to those for whom alone it was intended, and prevent the alienation, removal or abuse of it, in such a manner as to defeat the purpose of the trust. The deposit of the legal title in the trustees, and the delegation to them of authority to control the use of the slaves and household furniture, were intended to secure to the beneficiaries the possession and use, and prevent any abuse of the trust by them or by their husbands. Such conservative supervision and control are all that can be necessary for effectuating the trust, and could not be exercised in the most acceptable

or useful manner without yielding to the beneficiaries the possession of the furniture and slaves, as long as they shall make a proper use of them.

But none of the same considerations apply to the money. That cannot *be used* by the beneficiaries, otherwise than in the receipt of the profits from the trustees, without being converted. And the wife's possession of it may give it to the husband, and defeat the testator's object, not only as to her, but as to her children also. The only object of bequeathing the money to the trustees, was to keep the principal from the possession and control of the beneficiaries and secure to their use the annual profits. The trustees should not, therefore, be compelled to surrender the money. It is their right, in fulfilment of the testator's purpose, to hold the principal sum fast, and making it as productive as possible, to pay the annual product to the beneficiaries.

But, as there is no intimation that the slaves will be unsafe in the possession of Mountjoy and wife, and especially as, on the contrary, it appears to be altogether probable that they would keep them safely and use them prudently, we are clearly of the opinion that they are entitled to the possession of them, subject to such control only by the trustees, as may become necessary to prevent any abuse of the property or evasion of the trust. And being thus entitled to the possession, they should not, in our opinion, be required to give any security, unless there had been, or shall be, some reason to apprehend that the property would be insecure in their possession. The record contains no intimation of any such apprehension or of any ground for it. And it is a well settled doctrine of modern equity that, without some such cause, persons entitled in remainder cannot require the tenant of the particular estate to give security for the safe keeping and ultimate forthcoming of the property. The testator made no such requisition, and confided the particular estate, with confidence, and without any other restriction than the supervision and control of the trustees, and the equitable right of the persons in remainder to require other security, if their rights would be obviously jeoparded without it. The children,

who were parties, by their guardian *ad litem*, have not even asked for security.

Wherefore, it seems to us, that the Circuit Court erred in requiring the bond and security prescribed in the decree, and in dismissing the bill for a refusal to comply with that requisition. And upon the cross errors, we must suggest that the Court erred, also, to the prejudice of the trustees, in requiring them to pay over to Mountjoy and wife, the money bequeathed in trust to her use.

Decree reversed, and cause remanded for a decree conformable with the foregoing opinion.